UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALBERTO GABRIEL HERNANDEZ,                            :

           Plaintiff,                                    :

        -v.-                                              :

GPSDC (NEW YORK) INC., ADVANCED          :
HANDLING SYSTEMS, INC., PACIFIC
WESTEEL RACKING, INC., FALCON STEEL      :
CO., OLD NAVY, INC., and THE GAP, INC.,
                                                         :

          Defendants.
------------------------------------------------------------X

04 Civ. 127 (GWG)

OPINION AND ORDER

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Alberto Gabriel Hernandez brings this diversity action against GPSDC (New

York), Inc., Old Navy, Inc. and The Gap, Inc. (collectively, "the GAP"); Advanced Handling

Systems, Inc. ("Advanced Handling"); Pacific Westeel Racking, Inc. ("Pacific"); and Falcon

Steel Co. ("Falcon").  Hernandez alleges that the defendants' negligence and their violations of

New York's Labor Law caused him to fall at a construction site and sustain serious injuries.  On

March 9, 2006, this Court ruled as a matter of law that the defendants (other than Falcon, which

never answered Hernandez's complaint) violated New York Labor Law §§ 240(1) and 241(6),

though we found a genuine issue of fact as to whether Hernandez's own actions were the sole

cause of his injuries.

Pacific, the GAP and Advanced Handling (hereinafter, the "proposed indemnitees")

subsequently filed third-party complaints against Falcon seeking contribution and common law

indemnification.  Falcon now moves for summary judgment, pursuant to Fed. R. Civ. P. 56, to

dismiss the third-party complaints and all other claims against Falcon in this action.  The

proposed indemnitees oppose Falcon's motion, and Pacific has cross-moved for summary

judgment seeking an order of common law indemnification against Falcon for any verdict or

judgment Hernandez obtains against Pacific in excess of one million dollars. As set forth below,

both motions are denied, except that any claims for contribution against Falcon are dismissed.

I. BACKGROUND

A. Facts

Hernandez was injured on May 14, 2002, while installing a storage unit called a "pick

module" at a distribution facility owned by the GAP and located in Fishkill, New York. See

Hernandez v. GPSDC (New York) Inc., 2006 WL 563308, at *3-4 (S.D.N.Y. Mar. 9, 2006).

Previously, the GAP had hired Advanced Handling to coordinate the construction and

installation of the pick module, and Advanced Handling subcontracted the job to Pacific. See id.

at *1.

On April 23, 2002, representatives from Pacific and Falcon had signed a contract for "the

unloading, installing of [the module] extension and modification, dismantling of selective

racking and other." See Proposal, dated Apr. 23, 2002 (attached as Ex. K to Declaration of John

Sandercock in Support of Falcon's Motion for Summary Judgment Dismissing the Third-Party

Complaints, filed Aug. 17, 2007 (Docket # 128) ("Sandercock Decl.") and as Ex. F to

Declaration of Steven I. Lewbel in Support of the Cross-Motion of Third-Party Plaintiff Pacific

Westeel Racking Inc. for Summary Judgment Against Third-Party Defendant Falcon Steel

Structures, Inc. (attached to Notice of Cross-Motion of Third-Party Plaintiff Pacific Westeel

Racking Inc. for Summary Judgment Against Third-Party Defendant Falcon Steel Structures,

Inc., filed Sept. 10, 2007 (Docket # 135) ("Notice of Cross-Motion")) ("Lewbel Decl."))

("Pacific-Falcon Contract"), at 1. The contract does not contain an indemnification provision.

In the contract, Falcon agreed to "provide equipment, supervision and . . . labor" for the pick module project. Id. at 1. Falcon, however, separately made arrangements with Coast-to-Coast ("Coast") to perform work at the site – the nature of which, as described further below, is not clear from the record. There is no written contract between Falcon and Coast in the record, though there was testimony that Falcon and Coast agreed that while Falcon would sign the contract with Pacific, Coast would perform the work under that contract. See Deposition of Michael Kares, dated Jan. 31, 2005 (attached as Ex. J to Lewbel Decl.) ("Kares Dep."), at 26-28; see Rule 56.1 Statement, filed Sept. 10, 2007 (Docket # 138) ( "Pacific 56.1(a)"), ¶ 15. There was also testimony that Pacific and Coast had signed a contract, see Kares Dep. at 10-11, but none was produced.

B. Procedural History

After Falcon was brought into this case, the Court dismissed the causes of action Hernandez alleged under common law negligence and New York Labor Law § 200; ruled that the defendants had violated New York Labor Law §§ 240(1) and 241(6); and ruled that there was a genuine issue of fact as to whether Hernandez's own actions were the sole cause of his injuries. See Hernandez, 2006 WL 563308, at *21. Thereafter, Pacific, the GAP and Advanced Handling each filed third-party complaints against Falcon alleging causes of action for common-law indemnity and contribution. See Third-Party Complaint, filed Dec. 26, 2006 (Docket # 110) ("Pacific Compl."), ¶¶ 21, 24, 28; Third-Party Complaint, filed Jan. 5, 2007 (Docket # 113) ("Advanced Handling Compl."), ¶¶ 21, 24, 28; Second Third-Party Complaint, filed Jan. 11, 2007 (Docket # 114) ("GAP Compl."), ¶¶ 16, 19. Falcon has filed the instant motion for summary judgment seeking to dismiss of all claims against it by the proposed indemnitees, and

Pacific has cross-moved for summary judgment seeking an order requiring Falcon to indemnify it.[1]

II. APPLICABLE LAW

    A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-

---

[1] See Notice of Motion, filed Aug. 17, 2007 (Docket # 126) ("Notice of Motion"); Memorandum of Law in Support of Falcon's Motion for Summary Judgment, filed Aug. 17, 2007 (Docket # 127) ("Falcon Mem."); Sandercock Decl.; Rule 56.1 Statement, filed Jan. 28, 2008 (Docket # 148); Notice of Cross-Motion; Lewbel Decl.; Memorandum of Law of Third-Party Plaintiff Pacific Westeel Racking, Inc. in Support of Its Cross-Motion for Summary Judgment Against Third-Party Defendant Falcon Steel Structures, Inc. and in Opposition to Falcon's Motion for Summary Judgment, filed Sept. 10, 2007 (Docket # 136) ("Pacific Mem."); Rule 56.1 Statement, filed Sept. 10, 2007 (Docket # 137) ("Pacific 56.1(b)"); Pacific 56.1(a). The GAP and Advanced Handling opposed Falcon's motion, although they did not file cross-motions. See Affirmation in Opposition, filed Sept. 11, 2007 (Docket # 139) ("GAP Aff."); Declaration of Louis H. Klein in Opposition to Falcon's Motion for Summary Judgment, filed Jan. 3, 2008 (Docket # 145); Rule 56.1 Statement, filed Jan. 3, 2008 (Docket # 146); Memorandum of Law in Opposition to Falcon's Motion for Summary Judgment, filed Jan. 3, 2008 (Docket # 147). Falcon filed responsive papers. See Falcon's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment and in Opposition to Pacific's Cross-Motion for Summary Judgment, filed Sept. 28, 2007 (Docket # 141) ("Falcon Reply"); Rule 56.1 Statement, filed Sept. 28, 2007 (Docket # 140). Pacific filed a reply with respect to its cross-motion. See Reply Memorandum of Law of Third-Party Plaintiff Pacific Westeel Racking, Inc. in Further Support of Its Cross-Motion for Summary Judgment, filed Oct. 9, 2007 (Docket # 142) ("Pacific Reply").

movant "is to be believed," and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); accord Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) ("[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper") (citation omitted). "'[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" McCellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

Nonetheless, the nonmoving party cannot defeat summary judgment by a factual argument based on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48); accord Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (summary judgment "is appropriate when, after discovery, the party . . . against whom summary judgment is sought, has not shown that evidence of an essential element of her case –

one on which she has the burden of proof – exists").

B. Choice of Law

This case is before the Court on the basis of diversity jurisdiction and thus state substantive law is applicable. See DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir.) (in diversity cases, the federal courts are "bound to follow state law on any matter of substantive law" (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938))), cert. denied, 513 U.S. 1001 (1994). A federal court exercising diversity jurisdiction must apply the choice of law principles of the forum state. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); O'Connor v. Lee-Hy Paving Corp., 579 F.2d 194, 205 (2d Cir.), cert. denied, 439 U.S. 1034 (1978). "If conduct regulating rules are in conflict, New York law usually applies the law of the place of the tort." Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999). Here, New York was the site of the accident, and the parties in their briefs have cited New York law, thus signaling their consent to its application. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

III. DISCUSSION

A. Pacific's Claim of Indemnity

"A cause of action for indemnification must be based upon either an express contract or a common-law theory of implied indemnity . . . ." Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Dev. Corp., 125 A.D.2d 754 (3d Dep't 1986) (citations omitted), aff'd, 71 N.Y.2d 599 (1988). Pacific – the only party with respect to which there is a written contract in the record – does not assert that Falcon is liable under a theory of express contract indemnity. See, e.g., Pacific Mem. at 23 ("Falcon has misread Pacific's impleader to include a contractual indemnity

cause of action"). Instead, it seeks to hold Falcon responsible for common law, or "implied indemnity."[2]

> 1. Law of Common Law Indemnification

As one case has put it:

> To establish a claim for common-law indemnification, "the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident" (Correia v. Professional Data Mgt., 259 A.D.2d 60, 65 (1999); accord Priestly v. Montefiore Med. Ctr./Einstein Med. Ctr., 10 A.D.3d 493, 495 (2004)) *or "in the absence of any negligence" that the proposed indemnitor "had the authority to direct, supervise, and control the work giving rise to the injury"* (Hernandez v. Two E. End Ave. Apt. Corp., 303 A.D.2d 556, 557 (2003)). Where the proposed indemnitee's liability is purely statutory and vicarious, conditional summary judgment for common-law indemnification against a proposed indemnitor is premature absent proof, as a matter of law, that the proposed indemnitor "was either negligent *or exclusively supervised and controlled plaintiff's work site*" (Reilly v. DiGiacomo & Son, 261 A.D.2d 318 (1999); see Hernandez v. Two E. End Ave. Apt. Corp., supra at 558).

Perri v. Gilbert Johnson Enter., Ltd., 14 A.D.3d 681, 684-685 (2d Dep't 2005) (emphasis added).

"[T]he predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee." Monaghan v. SZS 33 Assoc., L.P., 73 F.3d 1276, 1285 (2d Cir. 1996) (quoting Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc., 109 A.D.2d 449, 453 (1st Dep't 1985)). Here, the proposed indemnitees make no argument that there is evidence that Falcon is negligent. Instead, they argue that the facts will show that Falcon had the "authority to direct, supervise, and control" – a phrase we shall sometimes shorten for convenience to

---

[2] It appears that the GAP, although not Pacific, is arguing that Falcon was contractually required to indemnify Pacific. See GAP Aff. ¶ 10. This argument, however, rests on a tortured reading of the contract between Pacific and Falcon. In addition, the GAP complaint does not even contain a claim for contractual indemnification and thus GAP has no standing to raise this issue.

"supervise" – the work giving rise to the injury.

## 2. Factual Evidence of Falcon's Role at the Site

The central piece of evidence offered by the proposed indemnitees to show that Falcon was supervising the work is the fact that Falcon explicitly agreed to engage in such supervision as part of the contract it signed to perform the installation of the pick module. In that contract, Falcon agreed to "provide a competent superintendent or foreman at this project who shall be constantly on the premises for the duration of the job and who will familiarize himself with the plans and specifications in order to assure that the work will be properly supervised." See Pacific-Falcon Contract at 2. Taken by itself, a written agreement by a party to do an act creates an inference that the party in fact performed the act required by the agreement. That potential inference is certainly not dispositive here, however, inasmuch as the same contract also contemplates that Falcon could subcontract out the work it was required to do under the contract. See id. at 3 ("Pacific Westeel Racking may withhold any payment to Falcon Steel Structures, Inc. on account of . . . failure of [Falcon] to make payments properly to its subcontractors").

The other evidence in the record as to Falcon's role raises more questions than answers. One piece of evidence is the deposition testimony by the project manager for Pacific, Kevin O'Neill. O'Neill was asked if Pacific was, inter alia, "installing" materials. Deposition of Kevin O'Neill, dated Jan. 27, 2005 (attached as Ex. K to Lewbel Decl.), at 10. O'Neill replied "yes" to the question but then qualified it by saying that Pacific "hired" Falcon to install the modules. Id. O'Neill's testimony gives no inkling as to what Falcon's actual conduct was at the site.[3]

---

[3] The full exchange is as follows:

Q: Did Pacific engage in these two activities; were they supplying materials and also installing materials?

The GAP asserts that Coast's president, Michael Kares, testified that "a mix" of Falcon and Coast employees performed the work. GAP Aff. ¶ 5 (citing Kares Dep. at 12-13). Kares makes reference to the potential existence of both Falcon and Coast employees on the job; but his testimony is completely confused (or confusing) on this point. Kares later testified that he believed that "all" the employees were from Coast. Kares Dep. at 16. Kares never states who was supervising the work at the site. At one point, however, he affirmed that "[i]t wasn't Falcon's job to provide the supervision on the site." Id. at 27.

Kares also testified that Coast "involve[d]" Falcon in the project "[f]or payroll." Id. at 51. Other evidence makes clear that Pacific wanted Coast to be put on the job in some capacity, id. at 26, but that a Coast representative told Pacific that "[a]ll paperwork would go through Falcon so there are no ties to Coast to Coast." Email from Jeff Dion to Vince Cirillo, dated Apr. 17, 2002 (attached as Ex. J to Sandercock Decl.), at EE-3. Coast assured Pacific that it would "have the full resources of" Coast on the project, and that Pacific "will get the quality installation and workmanship [Pacific has] come to expect from" Coast. Id. In addition, Coast stated prior to the start of the job that Coast "employees will be placed on Falcon's payroll, but they will be our men." Id. But Kares gave no testimony one way or the other as to who was providing

---

A: Yes, we hired Falcon Steel as an outside purchase to install our product.

Id. (lines 15-19).

Q: Did Pacific turn around and hire any other third parties or companies to assist it in the duties it was supposed to complete in this particular project?
A: We hired the installer.
Q: Who is that; is that Falcon Steel or some other company?
A: Falcon Steel.

Id. at 21 (lines 9-16); see Pacific Mem. at 5-6.

9

supervision (as opposed to labor) at the site.

Pacific does not dispute that Falcon delegated the "labor and installation" of the pick module to Coast, see Pacific 56.1(a) ¶ 14, though Pacific says nothing about who was engaging in supervision. Pacific also states that "Falcon did not provide direct supervision over plaintiff's work at the time of the accident." Pacific 56.1(b) ¶ 7. The import of the qualifying word "direct" is not made clear, however. In its brief, Pacific asserts that "Falcon never ceded its supervisory role over the installation of the pick module," Pacific Reply at 3, though there is no citation for this proposition.

For its part, Falcon says in its brief that "[i]t was not even at the worksite." Falcon Reply at 2. No citation is given for this proposition either. The absence of any factual support for it is all the more remarkable given that Falcon must know precisely what was occurring at the worksite. Yet it has not submitted the affidavit of a single employee or principal of Falcon to state what was occurring there. Later in its reply brief, Falcon admits that "[t]here are unanswered questions concerning Falcon's role in this construction project." Id. at 15. While it insists that these unanswered questions do not extend to the question of whether Falcon supervised the work, id., the record is certainly not clear on this point.

### 3. Discussion

The proposed indemnitees' argument for indemnification does not focus on who was actually providing supervision at the site. Indeed, their argument is that it does not matter whether or not Falcon was actually supervising the work. What matters, according to them, is that Falcon bound itself contractually to supervise the work. Under this view, once a party obligates itself contractually to engage in supervision at a worksite, it cannot avoid a potential

indemnity claim by delegating that responsibility to a subcontractor.

Thus, Pacific argues that "[a]lthough Falcon delegated [the] installation process to its sub-subcontractor [Coast], Falcon remains legally responsible to its prime contractor Pacific for the work Falcon agreed to perform and supervise." Pacific Mem. at 3. Pacific argues that "[t]o hold otherwise would allow a subcontractor to insulate itself from liability by the mere expedient of handing the work off to a sub-subcontractor." Id. Falcon, by contrast, insists that a party must actually be supervising the work, Falcon Reply at 9, and that, because the proposed indemnitees have not demonstrated this fact, they are not entitled to indemnification. See id. at 9-10.

The parties have thus raised a dispute over what showing must be made under New York law to obtain indemnity. Unfortunately, the case law on indemnity is sufficiently murky that it is not clear how a New York court would resolve this dispute. On one hand, the articulation of the indemnity rule often speaks of the indemnitor as the party who "actually" supervised or was "actually responsible" for supervising work. See, e.g., Keck v. Bd. of Tr. of Corning Comm. Coll., 229 A.D.2d 1016, 1017 (4th Dep't 1996) (indemnity available against entity that "actually supervised, directed and controlled the work that caused the injuries"); Carr v. Jacob Perl Assoc., 201 A.D.2d 296, 297 (1st Dep't 1994) (entity "actually responsible for the supervision, direction and control of the work the plaintiff was performing at the time of injury"); McCarthy v. Republic of Singapore ,1995 WL 70650, at *3 (S.D.N.Y. Feb. 17, 1995) (same). If actual supervision is required, it would not encompass a party who merely was contractually obligated to engage in such supervision but who in fact delegated the supervision to another party.

Similarly supporting the notion that there must be actual supervision are those indemnity

cases that speak of indemnity being available against the entity that "exclusively" supervised the plaintiff's worksite.  See, e.g., Perri, 14 A.D.3d at 685; accord Estate of Martinez v. Hollywood Atrium Gym, 41 A.D.3d 637, 638 (2d Dep't 2007); Farduchi v. United Artists Theatre Circuit, Inc., 23 A.D.3d 613, 613 (2d Dep't  2005); Reilly v. S. DiGiacomo & Son, Inc., 261 A.D.2d 318, 318 (1st Dep't 1999);  Shamir v. Farash Corp., 210 A.D.2d 882, 883 (4th Dep't 1994); Jones v. Powell Plaza Hous. Dev. Fund Co., Inc., 2006 WL 1933259, at *6, 12 Misc.3d 1182(A) (N.Y. Sup. Ct. July 7, 2006); Frycek v. Corning Inc., 171 Misc.2d 220, 223 (N.Y. Sup. Ct. 1997); see also Seecharran v. 100 W. 33rd St. Realty Corp., 198 A.D.2d 121, 122 (1st Dep't 1993) (proposed indemnitor had "constant supervision and exclusive control").  If "exclusive" supervision is required, a party with contractual responsibility to supervise could presumably arrange for another entity to engage in such "exclusive" supervision to avoid its potential liability for indemnification.[4]

On the other hand, there is other case law suggesting that an indemnity obligation could reach a party who had obligated itself contractually to engage in supervision of a site merely on the basis of that contractual obligation.  First, there are those indemnification cases that refer to the indemnitor as the party that has "authority" to supervise the work at a site.  See, e.g., Rodriguez v. Metro. Life Ins. Co., 234 A.D.2d 156, 156 (1st Dep't 1996) (a party "may be obligated to indemnify under the common law . . . where it 'had the authority to direct, supervise and control the work giving rise to the injury'" (quoting Terranova v. City of New York, 197

---

[4]  Falcon relies on some cases that refer to indemnification from entities that "caused the accident."  Falcon Mem. at 9.  These cases, however, are not on point since Pacific does not rely on the "negligence" branch of the indemnity rule but rather the "supervision" branch.  To the extent Falcon is arguing that it can be required to indemnify only if found "guilty of negligence," id. at 10, that argument is frivolous.

A.D.2d 402, 402 (1st Dep't 1993))); <u>accord</u> <u>Benedetto v. Carrera Realty Corp.</u>, 32 A.D.3d 874, 875 (2d Dep't 2006); <u>Perri</u>, 14 A.D.3d at 685; <u>Hernandez v. Two E. End Ave. Apartment Corp.</u>, 303 A.D.2d 556, 557 (2d Dep't 2003).[5]

More significantly, there are two cases that support the proposed indemnitees' efforts to hold Falcon liable simply on the basis of its contractual obligation to supervise the work. In <u>Ortega v. Catamount Constr. Corp</u>, 264 A.D.2d 323 (1st Dep't 1999), the First Department found indemnity where the proposed indemnitee, the property owner, "did not exercise any actual control or supervision over the work" merely because the owner had "hired [the construction manager] to exercise such control and supervision." <u>Id.</u> at 324. The decision specifically refers to "the absence of any evidence of the construction manager's direct supervision of the work in which plaintiff was engaged." <u>Id.</u>

Similarly, in <u>Murray v. Stein</u>, 2005 WL 3754409, at *12, 11 Misc.3d 1052(A) (N.Y. Sup. Ct. Nov. 9, 2005), an owner was found not to have exercised supervision and control over the activity that caused a worker's injury. The owner had "hired [a general contractor] to exercise that supervision and control." <u>Id.</u> at *11. The Court held that, based on these facts,

> even absent evidence of [the general contractor's] direct supervision or control over the work plaintiff was engaged in or [the general contractor's] awareness of any dangerous condition within the sidewalk bridge, between the owner and general contractor, the former is entitled to implied indemnity from the latter stemming from a violation under Labor Law §§ 240-41.

<u>Id.</u> (citing, <u>inter alia</u>, <u>Ortega</u>, 264 A.D.2d at 324).

---

[5] Even the term "authority" itself is ambiguous. One might say that Falcon had the "authority" to supervise and control the worksite merely because the contract gave it such authority. On the other hand, one might say that Falcon did not have "authority" over the supervision of the worksite if it had contractually delegated the supervisory responsibility over to another entity.

While these cases strongly support the plaintiff's position here – that is, that the contractual responsibility alone is enough to hold Falcon liable in indemnity – they are not dispositive of this case because they do not affirmatively address the question of whether a party contractually-responsible for supervision at a worksite is liable in indemnity even if there is a showing that another party, exclusively and with authority, engaged in actual supervision of the work at the site.   Indeed, none of the briefs have cited a case that squarely addresses this question and the Court is aware of none.

The Court's role in a diversity case is to predict what the New York Court of Appeals would rule as to the legal issue involved.  <u>See</u>, <u>e.g.</u>, <u>Travelers Ins. Co. v. Carpenter</u>, 411 F.3d 323, 329 (2d Cir. 2005).  Were the certification process available, this question would be a good candidate for certification to the New York Court of Appeals.  That process, however, is not available to a district court, <u>see</u> 22 N.Y.C.R.R. § 500.27, and thus we must make our own judgment about what the New York Court of Appeals would hold.  Given the conflicting articulations of the indemnity rule, the Court believes that this judgment must be made in light of the purpose of the indemnity doctrine, which is to avoid an "unjust" result.  <u>Mas v. Two Bridges Assoc.</u>, 75 N.Y.2d 680, 690 (1990).  As the New York Court of Appeals has held, "[i]mplied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other."  <u>Id.</u> (citing <u>McDermott v. City of New York</u>, 50 N.Y.2d 211, 216-217 (1980)); <u>see also</u> <u>Rosado v. Proctor & Schwartz, Inc.</u>, 66 N.Y.2d 21, 24 (1985) (indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another") (internal quotation marks and citation omitted).  Indemnity is generally

available "in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer." Mas, 75 N.Y.2d at 690. Therefore, we must ask here whether a party who is contractually responsible for supervision should in all instances be characterized as a "wrongdoer" and/or whether it would be "unjust" for some other party to bear responsibility instead.

Having considered the authorities available to support each side's position, the Court concludes that New York law would hold that where an entity is made responsible for supervision and control of a plaintiff's work by virtue of a contract, that entity should be liable in indemnity unless it shows that another entity, exclusively and with authority, engaged in actual supervision and control of the plaintiff's work at the site. In other words, in the absence of other evidence, a contractual responsibility to supervise work at a site should be sufficient to make the contractually-responsible party liable for indemnity (the result reached in Ortega and Murray). If, however, it is shown that another entity was actually supervising the site, was authorized to do so, and was doing so exclusively, indemnity should not be available against the contractually-responsible party (a principle dictated by the case law on indemnity generally).

In light of this legal standard, the Court is not prepared to award summary judgment to either side on the current record. While it is clear that Falcon was contractually responsible for supervising the work at the site, it is not at all clear whether there was some other entity – in this case, Coast – that was actually supervising, exclusively and with authority. Given the issues of fact on this point, the Court will deny each side's motion for summary judgment. The question will instead be determined by the appropriate trier of fact at trial.

B.  Other Arguments by Falcon

Falcon makes a number of other arguments in support of its motion.  Falcon asserts that it should not be liable for contribution.  Falcon Mem. at 12.  No defendant has submitted arguments opposing this aspect of Falcon's motion.  Indeed, Pacific concedes that it is not seeking contribution.  Pacific Mem. at 3 n.2.  Accordingly, Falcon is granted summary judgment on any claims for contribution by the defendants.

Falcon asserts that "if Falcon is found to be the plaintiff's employer," then it is immune from third-party claims for contribution or indemnity.  Falcon Mem. at 13-14.  But in its moving brief, Falcon marshaled no evidence that it was in fact plaintiff's employer.  Indeed, it argued that it "did not supply any labor" for the job, and "no employee . . . of Falcon" was at the worksite.  Id. at 13.  In any event, there are plainly issues of fact surrounding this question.  Thus, Falcon is not entitled to a ruling with respect to this question.

Falcon asserts there is no contractual agreement requiring it to indemnify any defendant.  Falcon Mem. at 15.  But no party is asserting such a claim in any of the third party complaints.  See Pacific Compl.; Advanced Handling Compl.; GAP Compl.  Thus, it is unnecessary to issue a ruling that Falcon is not liable for contractual indemnity.

Falcon asserts that the defendants have no claim against them under Labor Law § 240(1).  Falcon Mem. at 15.  Again, no defendant's third-party complaint purports to make a claim against Falcon under that statute.  Thus, it is unnecessary to issue a ruling that Falcon is not liable under section 240(1).

Finally, Falcon argues that Pacific's third-party complaint is barred or limited by the doctrine of anti-subrogation.  Falcon Mem. at 17-18.  But Pacific concedes that it is only seeking

16

indemnity for damages in excess of the applicable policy limit. Pacific Mem. at 22-23. Accordingly, the anti-subrogation doctrine does not apply.

Conclusion

For the foregoing reasons, Falcon's motion for summary judgment (Docket # 126) is denied, except with respect to its motion seeking dismissal of any claims against it for contribution. Pacific's motion for summary judgment (Docket # 135) is denied.[6]

SO ORDERED.

Dated: January 28, 2008
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[6] Hernandez also named Falcon as a defendant in his Amended Complaint, filed March 30, 2004 (Docket # 6). Falcon never answered this complaint, however, or appeared in the action until it was named as a third-party defendant. The motion papers now before the Court make no specific mention of Hernandez's claims against Falcon, though the Notice of Motion made a general reference to Falcon's motion to dismiss "any . . . claims" against it. Notice of Motion at 2. Hernandez filed no papers in opposition this motion and accordingly any claims by Hernandez against Falcon are also dismissed.

Copies to:

James K. Greenberg
Greenberg, Greenberg & Guerrero, LLP
363 Seventh Avenue, Suite 400
New York, NY  10001

Gregory E. Walthall
Hoey, King, Toker & Epstein
55 Water Street, 28th Floor
New York, NY  10041

Mark Yagerman
Smith Mazure Director Wilkins Young & Yagerman, P.C.
111 John Street
New York, NY  10038

Scott Miller
Frank D. Constantini
Miller & Associates, P.C.
1 Battery Park Plaza, 28th Floor
New York, NY  10004

Steven I. Lewbel
Melito & Adolfsen PC
233 Broadway
New York, NY  10279-0118

John Sandercock
Lester Schwab Katz & Dwyer LLP
120 Broadway
New York, NY 10271

indemnity for damages in excess of the applicable policy limit. Pacific Mem. at 22-23.

Accordingly, the anti-subrogation doctrine does not apply.

Conclusion

For the foregoing reasons, Falcon's motion for summary judgment (Docket # 126) is denied, except with respect to its motion seeking dismissal of any claims against it for contribution. Pacific's motion for summary judgment (Docket # 135) is denied.[6]

SO ORDERED.

Dated: January 28, 2008
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[6] Hernandez also named Falcon as a defendant in his Amended Complaint, filed March 30, 2004 (Docket # 6). Falcon never answered this complaint, however, or appeared in the action until it was named as a third-party defendant. The motion papers now before the Court make no specific mention of Hernandez's claims against Falcon, though the Notice of Motion made a general reference to Falcon's motion to dismiss "any . . . claims" against it. Notice of Motion at 2. Hernandez filed no papers in opposition this motion and accordingly any claims by Hernandez against Falcon are also dismissed.

17